The Illinois Appellate Court 50 Vision is now in session. The Honorable Justice Rainer W. Mitchell is beside me. Good morning folks. Pleased to be seeing you. So we're here on a case this morning. It's Casswood Terrace Homeowners Association v. Public Building Commission. We're allocating 20 minutes a side with 5 minutes for both for the appellant. And with that we'll get started. This is counsel for the appellant. Good morning. May it please the court. Adrian Vukovich. I represent the appellant's homeowners and the homeowners association for Casswood Terrace. Thank you. Would I ask you to keep your voice up? That does not amplify it. There are people all the way in the background. Yes. Mr. Friedman brought his fan club. I didn't know what the blue t-shirts were but I know they want to hear you. Sure. No problem. So the issue this morning, first of all thank you for letting us argue this case. The main issue this morning is whether the trial court should have dismissed the complaint based upon res judicata. But if you amplify that issue, it's really could a 1966 decree, which involved whether the property could be used as a school, have contemplated this case which involves a 2018 proposed annex to the school. And we think that there's no way. As broad as res judicata is applied and it has its purpose in the court system to limit repetitive litigation, this is not repetitive litigation. Before we get to the 1966, I think it is, decree that the trial court said was res judicata, is it your position that there could be an eminent domain taking that doesn't disturb some covenant? And then 20 years later, the government decides to use the property differently and then the people that are disturbed by that, that own the covenant, can come in and seek compensation or enjoin that? Is that your position? That there's no limit on when you can come in and stop the government from using the property in a certain way? There's no limit if at the time of the condemnation case, the covenants are not addressed. Some of them were clearly addressed, but you're saying this one was not addressed. Well, they were not addressed in the condemnation case. So what the argument was in the 2615 motion filed by the public building corporation was that upon condemnation, restrictive covenants are extinguished. And Judge Meyerson said absolutely that did not occur. And I have a whole argument that Judge Mitchell wants to ask me about. So I want to ask you about, this is a 1968 Chicago-Kent law review article, methods for removing restrictive covenants in Illinois. And this is what the law journal article says. A municipal or state government may, through its exercise of power of eminent domain, remove the restrictions from the land. The government does not remove the restrictions per se, but the removal is automatic as a result of the action. So I guess that's what I'm struggling with. Isn't this just form book property law that condemnation proceeding extinguishes any restrictive covenants? They can't be enforced against the sovereign. That's not the law in Illinois with all due respect to Kent Law School, which I did not attend. It's not the law. And, you know, Appleby's concede that it's not the law. I think they argue that it is the law. They concede that there's no law in Illinois. So there's an absence of law. Well, there is an absence of law, I agree. But if you look at the precedent involving this property, it's clear that these covenants were not extinguished. Even if you look at the 1966 decree, which was post-condemnation, one of the things that Judge Covelli did was he said these covenants exist, and he cited to other case law within his decree in which each of those courts, some before the condemnation, some after, said that the covenants exist. So it may be the case sometimes in other states that condemnation automatically extinguishes covenants, but it's not the law in Illinois, and it's definitely not the law on these covenants. Even if you look at, I think it's the Passion case, which is an appellate court case, 1st District, 1965, Passion v. Pashkow, that's 1965, post-condemnation, they uphold the covenants. So they were not extinguished. Not against the government entity. That's correct. That's what we're talking about here, a government entity. Okay, so for that to have occurred, then that would be a taking because a covenant is an easement, right? That was a condemnation proceeding. But not everybody was made a party to that proceeding, and they did not receive just compensation if, in fact, the covenants were extinguished at that time. But wasn't that what the 63 case was about, was trying to get that compensation? And the judge dismissed that and found that the covenants remained in place, and therefore there was no taking. Because if there had been a taking, the court would have had to have awarded just compensation. And also, just procedurally on this argument, this was the 2615 portion of Appley's argument. The judge denied that 2615 portion of the motion. No false appeal. But we can affirm on any ground. Well, can you affirm on a motion, on an order, that was not appealed? It seems to be we were denied the right to amend the complaint, which would be unusual for a 2615 motion. Do you have a motion complaint? Pardon me? Was this your first amendment? Second amendment. So you did have an opportunity to amend at least once. We amended once. The first amended complaint, the first argument was lack of standing. We addressed that. First amended complaint was dismissed with prejudice. Denied the 2615. So how can we now affirm when they didn't cross-appeal the denial of the 2615? I realize you can consider anything in the record, but as an appellant, if I didn't file a notice of appeal of an order, we'd be, you know, machine gunning me down because I didn't follow procedure. I mean, figuratively, of course. But so why doesn't that same procedure apply here? It should. They did not appeal that order, which maybe tells you the strength of the case or their consideration of it. I don't know. But the fact is that these covenants remain in place. Even Judge Meyerson, who ruled against us, was very careful about saying maybe they shouldn't be, but I cannot say that they don't remain in place. They're still there. So there's no law which says that they're extinguished automatically in Illinois. The closest case that we both discussed was that Chicago tool and dye manufacturer versus Mallet. And in that case, they talked about an inconsistent use and an easement. So if you apply the 66 decree, the substance of that ruling was that the use, as a school, was consistent with the covenants because the court found there was no violation of the covenants. If that's the case, and we have to accept that, then that would mean, using the reasoning of that Chicago tool and dye case, that there was no extinguishment of the covenants. And so we're back to the setbacks, which nobody is saying it's not an argument, oh, they violate them, they don't violate them. It is accepted, at least procedurally and in this record, that this proposed annex would violate the setbacks and also the zoning. Counsel? Yes. Where does res judicata come into your argument? How do you respond to the argument that res judicata applies to all of this? Because while the issue of the setbacks was not specifically referred to, it is a part of the covenants. And additionally, the covenants, the order in 1963 discusses the fact that this is a school. And is it not foreseeable that schools have gyms? It's foreseeable probably, but that's not the standard. The issue here is, is there an identity of causes of action, the one element of res judicata. So I understand it's broad, because I do defense work, too, and it's what was litigated and what could be litigated. So you have to say that Judge Covelli, when he entered his 1966 order, had divine clairvoyance about this 2018 proposed school annex, because there's nothing in this record, not a single fact, which said that this annex was considered, proposed, contemplated. It's a different building. And I'll direct you to the complaint in the 1963 complaint. It alleges that the set restrictions are of great value and benefit to plaintiffs and create for each of them an interest in the nature of an equitable easement in each of the other lots facing Castlewood Terrace, on and on. And then the complaint also sought $1,000 per homeowner for the violation. And they lost. Homeowners lost. Yes. And they never appealed. Yes. So it's all over. No, it's not. It's not. It can't be. So just think about what the relief sub was. One was to enjoin the building of the school, or I guess tear it down because it had been built partially by that time, because it violates the covenants. And two, give us money because it's a taking. And the court said it complies with the covenants. So that means there couldn't be a taking because compliance is the opposite of taking. But the court's decree also in that same paragraph 8, where it says it doesn't violate the restrictions, but then it adds, and it is a public institution supported and maintained by public funds. Isn't that some nod to the fact that it's a taking for a public purpose, the construction of a school? The taking had already occurred in prior litigation. So it's the whole sentence, though. I'm looking at paragraph 8-2. The erection and operation of the public school on lots 40, 41, and 42 does not violate any of the restrictions and covenants. Why does it matter? Because you cannot enforce those covenants against the sub. It doesn't say that. That's going to be written. No, listen, it's not our burden, right? So this is a res judicata. If there's ambiguity in this decree, and you could argue there is. I think it's clear in our favor. But at a minimum, then, there's ambiguity in the decree as to the basis of the court's ruling. You could look to the complaint, then, as one source of straightening out the ambiguity. And twice in the complaint, filed in 1963, are statements, allegations, that the use, it is the use of the property as a school which violates the covenants. There is no way that they touched the setback issue. And even if you want to say that they did, there's no way they could have possibly touched the setback issue of this annex, which is a different structure which extends the building. So for the sake of, let's say you're correct about that. Then, by definition, don't we have to decide one way or the other whether or not you could ever even enforce this against a public entity that obtained the property by condemnation? You would have to read procedurally. You would have to remand it and say, because the basis, to me, it's this. They did not appeal 2615. We were supposedly stuck with a 1966 order that was not appealed. Then why should the Public Building Commission not be stuck with an order which it did not appeal? Well, they won, so they couldn't cross-appeal that. But can you answer Justice Mitchell's question?  Because? The question is can you decide it on that ground, right, that we can enforce the covenant to decide it? In order to send it back, we have to say, yes, these covenants can be enforced against a public entity that obtained the property through condemnation procedures. I don't think you have to reach that decision. I think you have a narrow decision in front of you, which is only whether res judicata was properly applied. However, if you get to that issue, again, these covenants have remained in place, and then you get to the zoning issue, which the trial court completely ignored. Now, if you don't like the fact that covenants are enforced against a public body, zoning is, according to the Illinois Supreme Court in that Gerva case that involved Crystal Lake High School, and the reason the court upheld the zoning, upheld the lower court and the appellate court, was that the construction of the bleachers at the high school violated the local zoning ordinance. Can you leave the zoning for a minute? I want to stay with the covenants. So the covenants, let's assume it violated the covenants, and we send it back and say they're still in effect. You couldn't get injunctive relief. You could only get compensation, correct? You can't enjoin a government from using the property that they've acquired by eminent domain. There would have to be a proceeding on whether there's an inconsistency, okay, according to that Chicago tool and dye case, which is a question of fact in my mind, which would be a basis for remand. And then if the court determined that we could not enforce the covenants against the public building commission, then there would have to be a proceeding involving compensation. Did you see compensation in your complaint? No, we saw a declaratory judgment, which doesn't preclude other relief later, which is another reason the court shouldn't have dismissed the case with prejudice. The finding in this court that a fact which did not exist, that a plan that nobody knew about was somehow barred by a 1966 case, makes res judicata as broad as it ever could be. And the defense lawyer in me says, great. But the lawyer in me, no label. Your main sense of fairness. My main sense of fairness and justice says this can't be right. Well, let's stay for a second. So the 63, I think it was a 63 case and a 66 decision, did say, look, you put multiple units on this property. That clearly violates the covenants, right? That was the complaint, the original complaint. The multiple units, yes. The multiple units. Those are clearly worth less than $5,000 back in the day. So clearly there's a violation of the covenants by the school at the time of the 66 decree. There's no question there's a violation. But the court says, no, no violation. It's a public use. Sounds to me like they're saying, yeah, you guys, you're out of luck. No, I disagree. One is, the first part of your question has to do with whether the character of the neighborhood has changed or there's been an acquiescence in the violation of the covenants. That's a question of fact. There's other prior case laws cited by Judge Covelli in his decision which upheld the covenants and said they were not eliminated by acquiescence. As to the second part, public use, it does say that, but it says a public institution. I think we're mixing terms. The argument in the complaint, the allegations in the complaint in 63 was that the use violated the restriction. And so we get to which restriction? There's the restriction which says you can't have a business. Okay, it's a public school. It's not a business. That's where that fits in. We don't have to go above the plain language of the covenants. And that's all the court was asked to interpret in 1963 and finally came to the decision in 66. So yes, the court in 66 talks about a public institution and public funds, but that could just as easily be in reference to the fact that it is not a business and referring to covenant. I think it's six of the covenants that are identified. And it also could be referring to the fact that it's a public school. It is referring to the fact that it's a public school, and I think it's clear. We're not trying to stop a school. That a public school is a use which is consistent with the covenants. That's the greater benefit of the community. I don't think we have to jump to such a higher purpose. We can look at the covenants, which is all the court was asked to do. It's the circuit court, or superior court at Crook County at the time. And it found that a public school is a use which is permitted. That's it. We don't have to. There's nothing in this order which says the covenants were eliminated. And quite frankly, why would the decree refer to the covenants and go through any analysis if they were eliminated? It said it did not violate any of the covenants. Okay, but if they don't exist and cannot be enforced against the public body, then you don't have to talk about whether the covenants are violated. You just have to say, we don't care because they don't exist. And that's not what the court said. We are talking about semantics here. The judge chose to write a very broad order. Is it a very narrow? It's narrow. He said this school. This school. And this property doesn't violate these covenants. And that's what we, years later, are looking to determine what he meant when he said this school. Is it this particular building? Or is it this school? And if it's the school, what is it the schools do? Is it foreseeable that they may have some need to do something else that schools do? At that time, I think they had gyms. So those things go to, you know, raise you the card. Well, but I will say under 2619, allegations of fact are accepted as true. In the record, C-113, we allege that this was a, this plan, the 2018 plan, extended the school and violated the setback. That's accepted as true. Can I ask an unfair legal question? Sure. Is there any English-speaking jurisdiction on the globe where a restrictive covenant has been enforced against the sovereign? Although my mother was from England, it may be, there may be some law there that I don't know. I don't know, Judge. But if you can enforce zoning laws against a governmental body, which the Supreme Court upheld in Gerba, it seems to me that the exact same setback, which is contained in the zoning law, can be enforced against the Public Building Commission in this case. You have a history of reaffirmation of these covenants with not a single court. There's like six cases, plus the 66th case, which reestablishes these covenants. And there's not one board which says except for the government. And you have only the one case we've all cited. Because in the 1968 Chicago Pet article, it was just understood. And the restatement of property says basically the same thing. It's just not unique to the Kent article. Okay, but has this, I suppose, you know, the Kent article is persuasive maybe. Since it's Kent, I would submit it's not even persuasive. But it at least tells us what the thinking was in the 1960s. It makes sense that in some jurisdictions that have addressed the issue, they've thought about should restrictions apply to a governmental body. That's not occurred in this case, and it doesn't need to occur. You have a narrow issue in front of you, which is the propriety of a res judicata order. If you want to jump above that, then it would be new law in Illinois. And it would expand, it would take a reading of the 66th decree, which is not there. It's contrary to that decree, which it had no, there was no point in saying that these restrictions apply. If they didn't, or were complied with, if they didn't exist. And so we're supposed to interpret things as lawyers, so you don't render language meaningless, and everything is important in the world. Well, if that's the interpretation that we're all supposed to follow, then the proper interpretation is in Illinois, covenants still apply to a governmental body. And if they're eliminated, there must be just compensation. So we should afford precedential value in 1966, cryptic 1966, typewritten decree that was never appealed. Better than a Kent reviewer. Going back to the 66th case, which you say is ambiguous, and I appreciate that. I think you're right on that. But how is that ambiguity supposed to be resolved? I know you think it's supposed to be resolved in your favor, but how would one, what kind of evidence are we hearing, or how would one decide what this meant? Isn't it a legal question? We read it and we decide what it means. No, I mean, I would think that if I was arguing res judicata, maybe I'd get the entire file, not just the complaint and the decree, and maybe see what the court considered. Maybe that's the basis for remand. But we didn't have the burden of proof here. Only the public building commission did. And based on what they gave the trial court, that wasn't enough to get a dismissal of the case. I don't think it's, period. And if something more was required, it was incumbent upon the defendant to come forward with that. And, you know, we've cited a case, I think it's Hoy versus Brown, which says on res judicata, the party that claims that res judicata applies, the standard is clear in convincing evidence. If that's correct or not, they still have the burden. And based on the documents that exist, it's either wrong, because we should read the decision as it's written and not speculate, or there's a question of fact which would require a remand. Thank you. I have one last question, I'm sorry. I want to go back to my initial question, which is, let's assume you're right. Let's assume it's not decided by the first case, the 66th case, if all that case decided was that, which I do think is the law, both in the restatement and in Kent, that any use by the government that is inconsistent with the covenant is extinguished by the government's end of domain. Provided just compensation is paid. Some states say just compensation needs to be paid. Some states don't. I'm not sure what advice you've laid in on it. But, okay, assuming just compensation is paid. Then, is there any case in which the government then, 20 years later, does a different use that wasn't inconsistent at the time, that is now inconsistent? So, like this case, according to you. They violated the setback. They didn't in 1961, but they did in 2018. Is there any case in which courts have said, oh, no, the government can't do that because that use was not inconsistent at the time of the taking? I don't have a case at my fingertips. But we've cited two cases. They're zoning cases where the question is. I think zoning is different. Zoning is not appropriate zoning. It's land use. And the reason the courts in those cases found that res judicata did not apply was that there's an evolution. So, in this case, the first building did not violate the setback, did not violate the restrictions. Now you want to change it. Your neighbor wants a shed. Now there's an issue. It's the same kind of thing. This is an evolution. It's not against the school. You shouldn't have a school or some, you know, barbaric theory like that. It's that if you're going to build this building, please do it in conformance with the restrictions, which remain of record. And I know you don't like the word zoning, but end the zoning. So is anything in our decision here or this case preclude you from bringing a zoning action or preclude a zoning action? Isn't that an entirely different procedure? We try to. We try to amend this case. But I'm saying can you bring a zoning? Well. I don't know much about zoning. I would say that we should be able to. But I would be concerned that the application. Particularly as used in this case could preclude it, and that would worry me. But I don't believe that at least the trial court addressed the zoning issue. She specifically said she wasn't going to. She didn't say anything. Right. She didn't let you amend to add a zoning. Well, it was in the first amended complaint, not addressed in the dismissal order. Okay. Motion to reconsider, denied without explanation. Motion to file a second amended complaint with the pleading attached, which included more zoning stuff, denied. Got it. So I would have a concern about other litigation absent a remand. And clearly the zoning process does not provide compensation. Right. No, it's a different process. Yeah, and you can do it as relief that might be available. The city zoning committee could say they have to build it 15 inches smaller. I don't know. I would think, I would ask that if zoning is a basis, if you believe that zoning is the appropriate basis for the appellants in this case, that the matter be remanded, rather than having me stand here two years from now and arguing why it shouldn't have been applied a second time. Thank you. May it please the Court, Mr. Vukovich, I'm Richard Friedman, representing the Chicago Public Building Commission, the appellee in this case. Now, we've just heard Mr. Vukovich argue for what's really an extraordinary proposition, and that is that a private restrictive covenant vetoes a public project, that a 1896 private agreement forever limits what the public can do on its own school property. It forever limits what can happen on the McCutcheon School property. That's not good policy, but it's also not the law. Judge Meyerson's judgment dismissing the First Amendment complaint was correct, and it can be based and it can be supported, not only on res judicata, but a handful of other grounds for affirming Judge Meyerson. The first is that the plaintiffs don't have an interest in the property anymore. Their interest was taken in the 1960 and 1961 condemnations.  I'm sorry, Judge. With no compensation. They asked for compensation. I know, and they didn't get it. They didn't get it. And what do you say about that? 60 years is a little bit late. They didn't appeal, I mean, I suppose. If it was wrong, they didn't appeal. That's correct. So there's two reasons for saying they're not entitled to the $1,000 each just compensation if they sought. One is that Judge Covelli filed against them and said they weren't entitled to it. And second of all, it's foregone after 60 years. So whatever statute of limitations exists for adverse possession, 60 years is well beyond the statute. And there's a corollary to that. The city, for the use of schools, acquired the entire property by condemnation, which included the covenant interests. And, of course, even if the interests were not taken at that time, it's a little bit late now to be asserting them. Another ground is what you covered extensively is res judicata. They are precluded because these issues were determined in Judge Covelli's 1966 decree. And finally, in all events, no matter what went before, a restrictive covenant cannot supersede the public interest. So let me address whether the plaintiffs have any interest in the McCutcheon School property at this late date. And the answer is that all of the sticks in the bundle were acquired in the 1960 and 1961 condemnations. The judges in that case issued identical orders at the end of the jury process. And the courts ruled that the city is vested with fee, simple, absolute title to those properties. So fee, simple, absolute means to me all of the sticks in the bundle. The city acquired the interests, whatever interests there may have been, of the neighbors in that restrictive covenant. They obviously had some interest mutually through that restrictive covenant, but all of their interests were taken in the condemnation. So the simplest disposition of this case was to say that the plaintiffs' interests were taken at that time in 1960 and 61. Their interests were terminated by the condemnation. They have no interest in the McCutcheon School property at this date. Is your view that that is the res judicata argument? Is that a separate argument from res judicata, or is it the same? Is it we should read the 66 decree as saying that, and so it's res judicata if they were wrong? It's the judgment. It's not res judicata. It is the judgment. The judgment is the 1960 and 61 condemnation judgment. Not Favelli's decision, but the condemnation judgment itself. Correct. And then the Favelli judgment says, after not entitled to any compensation award. Perhaps for that reason, or maybe for that reason. I see. Okay. So as a corollary, not only were... I'm sorry, but your res judicata argument to Meyerson was really based on the Favelli case, not the... That's correct. Okay. Yeah. So as a corollary, in addition to the city acquiring all the sticks in the... I mean acquiring the plaintiff's interest in 1960 and 1961, they also acquired whatever interest was in that property by reason of the restrictive covenant. Let's go back. If somebody had bought lots 40, 41, 42 from the homeowners, they would have bought it in fee simple, but they'd still be bound by the restrictive covenants, correct? That's correct. There's no doubt about that. So fee simple is not inconsistent with the covenants. It is in a condemnation case when all the sticks are acquired. That goes back to Justice Mitchell's point that in a condemnation situation, you can't bar the government from using the property as it sees fit. Is that your argument? What is your argument? Are you asking the justice or me? No, I'm asking you. I'm asking you. Judges don't have arguments. Please. They're interlocking concepts. All of the sticks are acquired, all of the interests are acquired, and the concept clearly is, irrespective of how the government acquired this property, either by purchase or by condemnation, a restrictive covenant under the restatement principle and another case that was discussed, the government cannot be bound by a restrictive covenant that interferes with the public use that's contemplated for the community. This is a community use, and a private restrictive covenant cannot restrict it.  So in the condemnation, both the public's own interests and the restrictive covenant were eliminated. They were gone. And that's because the 1960 and 61 decrees say sitting takes it in fee simple, not fee simple subject to certain restrictions. Which is the typical condemnation judgment. In fact, whoever drafted that, I have to praise them, because both judgments say fee simple absolute to make it even stronger. So how does that fit into the Covelli case in your res judicata argument? Because your res judicata argument runs from the 66th decision. So the bottom line in Judge Covelli's decree was case dismissed. And it was dismissed because it could have been for any of the reasons that we're discussing, but case dismissed because the plaintiffs no longer have an interest in the property. Case dismissed because those covenants no longer exist. Case dismissed because those covenants cannot restrict what the government has decided was a community interest in the McCutcheon school. So you're going back to your adversary's argument that we should look at the whole record. Part of the record before Covelli was the 60 and 61 condemnation judgments, and you're saying if you look at those judgments and look at Covelli's decision, it's clear that that's what Covelli is saying. Is that what you're saying? Those principles support the dismissal, Judge Covelli's dismissal. Okay. I think I understand that. There is one case that is instructive, and apparently we both agree on the importance of this case, and that's the Chicago Steel Wool Dye and Fabricators Company. Which was over wool, right, on other grounds. Correct. You know, you don't like to cite those red cases, those cases with red flags, but it's okay. It's clearly on other grounds, but it is one of the cases. Neither one of the parties found other cases in addition to that. And the facts of that are instructive, where the plaintiff in that case had acquired an easement by prescription or so they said against a property. The city condemned that property, and the city then conveyed the property to a developer. And now the owner of the prescriptive easement sued the developer and said that the easement must continue. And the court said when the city acquired that property, it extinguished the supposed easement. So whether it's an easement or whether it's a restrictive covenant, the principle is that condemnation extinguishes it. Let me turn briefly to race judicata. But this is race judicata, you're saying. I think what you're saying is this ties into race judicata. This is how we have to read the 66 decision. Yes? No, I'm not saying that. I'm saying that any one of these principles that I articulated until I get to the race judicata argument is an independent reason for affirming Judge Meyerson. Affirming her dismissal. So the 60 and 61 condemnations, the principle that a private restrictive covenant cannot limit what the government can do with its own school property. All those don't rely on race judicata. Race judicata is only one additional ground for affirming Judge Meyerson. And I have to say that Mr. Vukovich argued that the person asserting race judicata has the burden of showing it to the court. But don't forget the homeowners here are the plaintiffs. And apart from race judicata, they have the burden of showing that they should prevail. They had that burden before Judge Meyerson. So, of course, all of the elements of race judicata apply here. The ones that we know, there was a final judgment on the merits by a court of competent jurisdiction. There is an identity of the cause of action. We can argue about that. There's an identity of the parties and their privies. Of course, there's no question that the current parties are privies of the original litigants in the Judge Covelli action. But so what was the issue before Judge Covelli? And where do we go to find that? The issue before Judge Covelli was put in play by the plaintiffs themselves in the complaint, where they set out in heck and fervor all of the seven restrictions and say they don't apply. So, clearly, the annex, of course, was not before Judge Covelli. But the seven restrictions were before Judge Covelli. And who put them there? The plaintiffs put them there because that's what it says in their complaint. And they say all of them, any of them, do not apply in this case. What do you mean do not apply? They don't say they're in force and they're being violated is what they said in their complaint. I don't understand what you mean do not apply. The plaintiffs in the other case. That they do it. Yeah, they do it. Okay.  And, in fact, what's about to happen here are entitled us to compensation for what's about to happen. And that's one of the counts was the request for just compensation of $1,000. So that Judge Covelli, bottom line, said these restrictive covenants cannot be, do not apply in this case. And it's worthwhile seeing what Judge Covelli said. And he certainly adverted to the principle, if he didn't articulate it in the best possible way, certainly adverted to the principle that this is a public project that can't be stopped by private restrictive covenants. And he says on page C270, and this is his decree, the election and operation of the public school on lots 40, 41, and 42 does not violate any of the restrictions and the covenants set forth above and is a public institution supported and maintained by public funds. It is ordered, adjudged, and decreed that the erection of the public school on lots 40, 41, and 42 do not violate any of the restrictions and covenants set forth above. Accordingly, it is further ordered, adjudged, and decreed that the complaint being hereby is dismissed. And that's the bottom line. Isn't that the critical point is that courts speak through their judgments, not the reasons they give for judgment. And the judgment is the plaintiffs came in. They had a complaint that implicated all seven of the restrictive covenants. And the judge says case dismissed. That's all right. What more need be said? Well, let me say the other argument, which is the school as built at that time did not violate, as contemplated at that time, did not violate the setback provision. That's your opponent's argument. There was no violation of the setback requirement alleged in the complaint. And Covelli looked at the complaint and said none of these are violated. Now, 40 years later, the school is going to violate the setback requirement. Why is that decided by the Covelli case? Well, okay. Two things happened here. One is, as I said, all of the restrictions were put into play. Right. He looked at all of them. He looked at the school. He said none of these are violated. That's right. Perhaps wrongly, but he said that. But plaintiffs could have identified which one or two of the restrictions they thought superseded the construction of the McCutcheon School. What about the zoning code, the zoning ordinance? Well, that was never discussed as far as we know. No, I'm saying you have, when it was before Judge Myers, that by that time there is an issue with zoning on the property. Does that just disappear? Because you heard counsel argue that, and I wanted you to respond. Well, okay. Two things about that. One is, this is a premature argument. What ordinarily happens, and I expect would happen here, is that the Public Building Commission would ask for a zoning change to permit the attics to be built. And the second is, and the more technical argument is, that the statute prohibits neighbors from challenging zoning on other people's property unless they first give a notice. And there was no allegation in the proposed Second Amendment complaint that they complied with the statute. So there's two reasons why that shouldn't be considered. Two, just on that basis, if we were to affirm the judgment below, as you're asking us to do, that wouldn't create a restriction issue relative to some subsequent zoning change. If I may, I'd rather not make a commitment on that. We can put that in our opinion, I suppose, that it wouldn't. And then you can fight about it some other day. I just don't want to make a commitment on that. Would you agree that the school would have to comply with the zoning code and would have to ask for a variance in order to build this gymnasium? Or would you rather not stay on that? I know that not every governmental entity need comply with the local zoning. Consistently, the Public Building Commission has sought zoning permission from the city of Chicago. Okay. So even in the plaintiff's best case, the judgment below of dismissing their case was correct. Even if the plaintiffs were not a party to the original condemnation, and even if their interest was not acquired in the condemnation, and even if they hadn't been barred by the 60-year passage of time, and even if they had not been barred, even if Res Judicata did not apply, and even if their restrictive covenant was still alive, which we say that it's not, the judgment below was correct for the reasons that Justice Mitchell has outlined. Just as a matter of law and as a matter of good policy and a matter of precedent that we found in many other states, a restrictive covenant cannot be used to impede a public purpose. In this particular case, the restrictive covenant cannot be used to limit what the school, public schools say is necessary for the McCutcheon School, an annex to increase the capacity and functionality of the school. A restrictive covenant can't do that. This is the statement I think both parties have cited, the restatement first of property, which states that the principle is that where the restriction is inconsistent with the governmental use, it cannot be applied. And we have cited in our brief just a whole handful of cases from other jurisdictions applying that principle. Of course, we're not saying that this Court is bound by out-of-state appellate court opinions, but it's good law, it should be considered, and it is certainly persuasive. I agree that that's what the restatement says, but the restatement also says, and the majority view to my knowledge of Illinois is not weighed in, is that compensation is due to the people who are implicated by the government's use. Two things occur. One is, can it be taken? Must it be paid for? Right. Okay. It was taken. Right. They asked for it to be paid for. Judge Covelli said, case dismissed. So apparently Judge Covelli thought they were not entitled to compensation. Sixty years have passed. They've given up compensation. Or if they wanted to file an inverse condemnation, I suppose the courts would entertain an inverse condemnation where the plaintiffs could ask for the thousand dollars that they think their restricted covenant was worth. It's gone up since then. Right. Property is valued as of the date taken. So whatever, we of course would only speculate. Your Honors, the Judge Meyerson was correct in dismissing this complaint. Judge Meyerson should be affirmed. Thank you. Thank you, Counsel. So, Mr. Vukovic, you get the final word. Unusual. I mean, Mr. Friedman has outlined all these ways that you lose this case. I know. And you only have five minutes to address it. It's going to be tough. I'll try to do my best. So starting with this, I think the logical reading of the Covelli order is this, is that by denying the thousand-dollar just compensation portion of the complaint, he had to have made a finding that there was not a taking. He had to have made a finding there was not a taking. And he did that by finding that there was compliance with the restrictions. In order for him to deny the relief, deny just compensation, it would have to be a determination that the covenants apply, because if you erase them, money's got to be paid. And by finding compliance, he found that they apply to the public body. And so I think about this, is judges are taught to, you don't, you wouldn't make the ruling that the defendant did not violate the statute if the defendant was immune from prosecution. Issue one would be, I don't need to determine whether or not the defendant violated the statute because the defendant cannot be prosecuted. And that is kind of a basic premise of courts. We don't have jurisdiction, get out of here. We don't need to decide the rest. So with the Covelli order, it was not number one. It was not, these don't apply, so get out of here. It was, these apply, but you haven't violated them. And that's the only logical way to read that order. And although Mr. Friedman and the Public Building Commission wants to say, well, it's a 60-year-old order that nobody appealed, that order says good things for us, which is only that a school is permitted and that the governmental body has not violated the covenants. You could not get to that rationale unless they apply. This argument today, new argument in my view, that the language of the two condemnation orders in effect bars this claim. This is a new res judicata argument, never before heard until today, clever. But I don't know why we are required, according to the appellees, to read something into orders that's not there. Now, if I go to court and I draft an order that says judgment for acts against defendant and I don't put anything about attorney's fees, I don't get attorney's fees. I'm stuck with what the order says. So these orders from 1961, they don't eliminate the covenants. I don't know why we would read language into orders that's not there because we wouldn't do it in any other case. Just because it's the government, it shouldn't be a different method of reading orders. It talks about, like Justice Mikva said, fee simple. It talks about absolute fee simple. So what? I do real estate closings. That doesn't eliminate the restrictions on property. There has to be additional language if the order is eliminating restrictions. I just looked at them again while I was getting pounded by Mr. Friedman, and the orders don't eliminate the restrictions. So by the plain language of the documents, it doesn't support appellee's position or there's a question of fact. But what's missing, pause, what's missing is this argument that, ah, the covenants were eliminated and nobody had to pay just compensation, and it's our problem and it was our burden. That makes no sense. That's constitutionally screwed up backwards, and it's not the facts and the record. If, in fact, these easements, these covenants were eliminated, there had to have been just compensation, and there's no record of that. I appreciate your faith, but the reason we're here is that sometimes the trial court gets it wrong. So what if Judge Covelli was wrong and nobody appealed? Well, I'll tell you what, is that we were told we're stuck with a bad order and it's res judicata, but that applies both ways. Judge Covelli's order said you did not violate the restrictions. So maybe he was wrong in not awarding just compensation, and maybe he was wrong in saying the covenants were not eliminated. But if we're stuck with the bad part, they're stuck with the bad part, and according to that order, the covenants apply to the school. I mean, otherwise you would have no basis to find that they've acted in conformance with them. So that's really where it comes down to. And the last part is I heard a new argument today, again, that's not the law. Res judicata is the equivalent of an affirmative defense. It can be pledged as an affirmative defense, by the way. There is no burden on the plaintiff for an affirmative defense. That's absolutely true. But I guess what's a little more troubling is where the factual dispute that the burden matters. I mean, what is the evidentiary here in your contemplation? What is the factual dispute? I don't think there is because I think the two condemnation orders and the Covelli order support us. But if they don't support us, then no, because they don't say that the restrictions are eliminated. But we have to read them the same way we have to read case law. But then they're ambiguous. And then there has to be some kind of an evidentiary hearing about what was the circumstances when the orders were entered. We're never going to get to the intent of the judges that entered them. I don't think they're with us any longer. But it would have to go to the circumstances when these were entered and how we could be barred from enforcing the restrictions when we haven't received just compensation. That's never addressed by them. And it's not our burden to go get compensation. It's their burden to name everybody on that street as a party and pay them just compensation. And there's nothing in this record which says that happened. Thank you. Okay. Thanks for a very interesting and liking arguments. I'll take them under advisement for further study. And with that, we're adjourned. All rise.